**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**ANTHONY D. AMAKER, 89-T-2815,**

                    **Plaintiff,**                  **13-CV-250A(Sr)**

**v.**

**BRIAN S. FISCHER, et al.,**

                    **Defendants.**

───────────────────────────────

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #12.

Currently before the Court is defendants' motion for summary judgment (Dkt. #20), and plaintiff's motion for summary judgment.  Dkt. #31.  For the following reasons, defendants' motion is granted and plaintiff's motion is denied.

## BACKGROUND

On July 18, 2012, plaintiff moved for a preliminary injunction and temporary restraining order preventing defendants from altering their policy regarding the breaking of the fast during the Ramadan. 10-CV-977 at Dkt. #36.  Specifically, plaintiff sought to enjoin defendants from preventing plaintiff, and other Nation of Islam

members, from using personal bowls and cups with lids to take food back to their cells for consumption from sun down to sun up during Ramadan. 10-CV-977 at Dkt. #38.

Defendants responded substantively to the motion, but also argued that it was improper for plaintiff to seek injunctive relief regarding conditions that were not related to the issues set forth in the complaint from which the injunctive relief was requested.  10-CV-977 at Dkt. #41, p.6.  The Court agreed and advised plaintiff that if he wished to challenge the alteration in policy regarding Ramadan or allege that he was prevented from properly observing Ramadan, he should commence a new lawsuit against those individuals personally involved in the alteration and implementation of the Ramadan policy. 10-CV-977 at Dkt. ##57 & 58.

On March 7, 2013, plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), against representatives of the New York State Department of Corrections and Community Supervision ("DOCCS'"), and the Attica Correctional Facility ("Attica").  Dkt. #1.  Plaintiff complains that defendants: (1) subjected him to unnecessary force upon his return from the Elmira Correctional Facility on May 10, 2012; (2) imposed a substantial burden upon his right to religious practice by altering the policy regarding the amount of food inmates could take back to their cell during Ramadan in July of 2012; (3) failed to provide plaintiff with a Ramadan meal while he was in transit between Attica and the Elmira Correctional Facility ("Elmira"), in August of 2012;  (4) refused to allow his participation in Eid al-Fitr in September of

2012; (5) conducted improper and retaliatory cell searches during January and February of 2013; (6) excluded him from the 2013 celebration of Saviours' Day because he refused to complete a Request for Religious Meals or Cold Alternative Diet Acknowledgment and Consent Form to confirm his participation in religious celebrations involving special meals; (7) prevented him from purchasing food from outside sources which are in accordance with Nation of Islam teachings; and (8) imposed an unconstitutional tax upon Nation of Islam and Sunni fundraising. Dkt. #1.
procedural grounds. 10-CV-977 at Dkt. #58.


Joseph Chisholm, the IGP Supervisor at Attica, declares that a review of grievances filed with the Inmate Grievance Review Committee ("IGRC"), during the time frame of the allegations in plaintiff's complaint reveals three grievances: (1) A-59266-12, filed on February 1, 2012, challenges the confiscation of legal mail received from plaintiff's home address; (2) A-59342-12, filed on February 17, 2012, complains that plaintiff did not receive a call-out for Nation Of Islam service on that date; and (3) A-60773-12, filed on February 26, 2013, objects to the requirement that plaintiff sign the Request for Religious Meals or Cold Alternative Diet Acknowledgment and Consent Form.  Dkt. #20-7, ¶¶ 7-10.  IGP Supervisor Chisholm also submitted a print out of approximately 250 grievances which plaintiff appealed to CORC during his incarceration with NYSDOCCS.  Dkt. #20-7, ¶ 11 & pp.46-55.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party

seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA"), states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). "RLUIPA actions are included among the action under 'other Federal law' for which the PLRA requires exhaustion."  *Colliton v. Gonzalez*, No. 07 Civ. 2125, 2011 WL 1118621, at *8 (S.D.N.Y. Mar. 23, 2011).


In *Porter v. Nussle*, the Supreme Court held that exhaustion of administrative remedies in 1997(e) cases is mandatory[1] and should be applied broadly. 534 U.S. 516, 524 (2002).  The Supreme Court reasoned that requiring inmates to follow the grievance process would ultimately "reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims; and for those cases that eventually come to court, the administrative record could potentially clarify the legal issues.  *Id.* at

---

[1] Although mandatory, administrative exhaustion is an affirmative defense rather than a jurisdictional predicate.  *Jones v. Bock,* 549 U.S. 199, 216 (2007); *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

524-25.  Thus, "[e]ven when the prisoner seeks relief not available in grievance

proceedings" – such as monetary damages – "exhaustion is a prerequisite to suit."  *Id.*

at 524, *citing Booth v. Churner*, 532 U.S. 731, 741 (2001).


       The PLRA requires "proper exhaustion.  *Woodford v. Ngo*, 548 U.S. 81,

93 (2006).  In other words, prisoners must complete the administrative review process

in accordance with the  procedural rules set forth in the prison grievance process.

*Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012), *citing Jones v. Bock*, 549 U.S.

199, 218 (2007).  Thus, "untimely or otherwise procedurally defective attempts to

secure administrative remedies do not satisfy the PLRA's exhaustion requirement."

*Ruggierio v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006), *quoting Woodford*

548 U.S. at 83-84.


       New York provides a three-step administrative review process for inmate

grievances.  At the initial step, an inmate must submit a complaint to the IGRC within 21

days of an alleged occurrence.  7 N.Y.C.R.R. § 701.5(a).  The IGRC may attempt to

resolve a grievance informally, conduct a hearing to answer the grievance or make a

recommendation to the Superintendent. 7 N.Y.C.R.R. § 701.5(b).  If it is determined

that, *inter alia*, the grievant has made no effort to resolve the complaint through existing

channels or that the grievant has not been or will not be personally affected the issue

raised in the grievance, the IGRC may dismiss the grievance. 7 N.Y.C.R.R. § 701.5(b).

Dismissal of a grievance can be appealed to the Inmate Grievance Program ("IGP"),

Supervisor and, if unsuccessful, the inmate may file a separate grievance challenging

the failure to reinstate a dismissed grievance.  7 N.Y.C.R.R. § 701.5(b)(4)(iii).  An

adverse decision by the IGRC may be appealed to the Superintendent of the Facility

within 7 calendar days of receipt of the IGRC's response to the grievance. 7 N.Y.C.R.R.

§ 701.5(c).  An adverse decision by the Superintendent may be appealed to the Central

Office Review Committee ("CORC"), within 7 calendar days of the Superintendent's

response to the grievance. 7 N.Y.C.R.R. § 701.5(d).

　　　　　A prisoner need not exhaust remedies if they are not "available."  *Ross v.*

*Blake*, __ U.S. __, 136 S.Ct. 1850, 1855 (2016).  "[A]n administrative remedy may be

unavailable when 'it operates as a simple dead end – with officers unable or

consistently unwilling to provide any relief to aggrieved inmates.'"  *Williams v.*

*Correction Officer Priatno*, __ F.3d __, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016),

*citing Ross*, 136 S.Ct. at 1859.  Alternatively, "an administrative scheme might be so

opaque that it becomes, practically speaking, incapable of use."  *Id., quoting Ross*, 136

S.Ct. at 1859.  An administrative remedy may also be unavailable "when prison

administrators thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation."  *Id., quoting Ross*, 136 S.Ct. at 1859.

However, courts are no longer permitted to consider whether special circumstances

justify the prisoner's failure to comply with the administrative procedural requirements.

*Ross*, 1136 S.Ct. at 1856; *See Williams*, 2016 WL 3729383 at * 4 (recognizing that

framework set forth in *Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir. 2004) and

*Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), has been abrogated in part by

*Ross*).

Grievance A-59266-12

Plaintiff's grievance A-59266-12 complained about the confiscation of incoming mail as contraband.  Dkt. #35-2, p.8.  Plaintiff appealed the matter up to CORC, which accepted his grievance in part, noting "that the grievant should have been allowed the three pages of copied material from home, and that the facility administration has taken appropriate action to ensure that this cannot occur again." Dkt. #35-2, p.16.  Although this grievance was properly exhausted, the issue raised in the grievance is not at issue in plaintiff's complaint and is, therefore, irrelevant to the pending motions for summary judgment.

Grievance A-59342-12

Plaintiff's grievance A-59342-12, dated February 17, 2012, complained: "today . . . my religious rights were violated when I did not receive a call out for Nation of Islam Service." Dkt. #20-7, p.26.  The IGRC responded to Grievance A-59342-12 as follows:

> Grievant is advised that he may not have received a call out
> cause he had just moved.  Grievant is advised to address
> this issue with his block Sgt.  IGRC elect[s] to dismiss this
> grievance . . . as this grievant failed to try and resolve this
> issue before filing a grievance.

Dkt. #20-7, p.25. On March 13, 2012, plaintiff returned the grievance form indicating that he disagreed with the IGRC response and wished to appeal to the Superintendent. Dkt. #20-7, p.25.  There is no indication in the record of a response from the Superintendent or any further grievance by plaintiff.  Regardless, plaintiff's complaint does not include allegations regarding the denial of a call-out on February 17, 2012; the

-8-

earliest allegation concerns an alleged use of force on May 10, 2012.  As a result, this grievance is irrelevant to the pending motions for summary judgment.


Grievance A-60773-12

   Plaintiff's grievance A-60773-12, dated February 26, 2013, complained that the Request for Religious Meals or Cold Alternative Diet Acknowledgment and Consent Form violated his rights under the First Amendment and RLUIPA. Dkt. #20-7, p.31.  The IGRC "advised that per the Director of Ministerial and Volunteer Services the new consent form must be filled out and signed by an inmate whenever they are transferred to another facility in order to be given the requested Religious meals." Dkt. #20-7, p.29.  The IGRC further advised that "these new consent forms must be filled out and signed by an Offender who wishes to participate in the CAD diet or any Special Holy Day menus for there [sic] religion of record."  Dkt. #20-7, p.44.


   Plaintiff appealed to the Superintendent, claiming that the "First Amendment freedom of religion and Establishment Clause & Religious Land Use & Institutionalized person Act of 2000 is violated by coercive policies."  Dkt. #20-7, pp.29 & 44.  The Superintendent "advised that per director of ministerial & volunteer services the new consent form must be filled out and signed by an inmate whenever they are transferred to another facility in order to be given the requested Religious meals."  Dkt. #20-7, p.41.


   Plaintiff appealed to CORC on April 2, 2013.  Dkt. #20-7, p.41. By decision dated August 7, 2013, CORC denied the grievance as without merit and

upheld the Superintendent's determination for the reasons stated, noting

> that inmates are required to sign the Request for Religious
> Meals of Cold Alternate Diet (CAD) Acknowledgment and
> Consent Form in order to receive the CAD, pursuant to
> Department policy.
>
> With respect to the grievant's appeal, CORC has not been
> presented with any compelling evidence to warrant the
> revision of established Department policy at this time. . . .

Dkt. #20-7, p.28.

Defendants argue that plaintiff's grievance was not properly exhausted because he filed his complaint with this Court eleven days after he filed his grievance. Dkt. #20-2, p.10.

Plaintiff does not specifically respond to this argument.

Unfortunately for plaintiff, it is well established that receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice. *Gizewski v. New York State Dep't of Corrs. & Cmty Supervision*, No. 9:14-CV-124, 2016 WL 3661434, at *13 (N.D.N.Y. July 5, 2016); *See Burgos v. Craig*, 307 Fed. Appx. 469, 470 (2d Cir. 2008) ("completing the exhaustion requirements only after filing suit is insufficient."), *citing Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).  In *Neal*, the Court of

Appeals for the Second Circuit acknowledged that requiring an inmate to initiate a new lawsuit where his claims were exhausted after the filing of the lawsuit is judicially inefficient when considered on an individual basis, but determined that "allowing prisoner suits to proceed so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."  267 F.3d at 123.  Dismissal is required even where, as here, it appears that plaintiff's claims are now time-barred.  *Gizewski*, 2016 WL 3661434, at *14 n.27.  As it is clear that plaintiff filed this action before he appealed his grievance to CORC, this claim must be dismissed.


Remaining Causes of Action

Defendants argue that plaintiff failed to file grievances with respect to the remainder of the claims asserted in this lawsuit.  Dkt. #20-2, p.10.


Plaintiff responds by declaring that he sent a letter to DSS Thompson requesting an investigation into who was responsible for denying call-outs for the Eid-al-Fitr festival on September 15, 2012.  Dkt. #34, ¶ 3.  It is clear, however, that prisoners may not bypass the inmate grievance process by sending letters directly to the Superintendent. *See Rambert v. Mulkins,* No. 11 Civ. 7421, 2014 WL 2440747, at *9 (S.D.N.Y. May 30, 2014) ("IGP regulations clearly require a prisoner to submit a grievance in the first instance to the IGRC, not the Superintendent"); *Byas v. State of New York*, No. 99 CIV 1673, 2002 WL 1586963, at *2 (S.D.N.Y. July 17, 2002) (collecting cases).  Accordingly, plaintiff's cause of action regarding the denial of a call

out for Eid al-Fitr on September 15, 2012 is dismissed for failure to properly exhaust administrative remedies.

Plaintiff also references a grievance against CO Yackeren and CO Olles dated March 1, 2015 complaining that they had the plaintiff transferred after he complained about the lack of an Inmate Liaison Committee ("ILC") election at Attica since his arrival in 2010.  Dkt. #34, ¶ 4.  Plaintiff declares that he has not received a response to this grievance following his transfer to the Green Haven Correctional Facility.  Dkt. #34, ¶ 5.  As this grievance does not appear to have any factual or temporal relationship to any of the claims in this complaint,[2] however, it cannot satisfy the exhaustion requirement for those claims.

Plaintiff's general allegations of corruption in the grievance record system, interference by unspecified corrections officers with inmates' ability to access the IGRC office and rejection of grievances for failure to utilize the proper form (Dkt. #33, ¶¶ 12-13), fail to suggest that the grievance process was unavailable to plaintiff with respect to any of his remaining causes of action, particularly given the number of grievances he

---

[2] Plaintiff's complaint alleges that Sergeant Olles and CO Bell conducted an improper and retaliatory cell search on January 3, 2013.  Dkt. #1, p.9.

Plaintiff also complains that CO Yackeren attempted to plant a makeshift weapon in his cell during the course of a cell search on March 1, 2012.  Dkt. #1, p.11.

Plaintiff's complaint also alleges that CO Yackeren and other corrections officers not named as defendants in this action subjected plaintiff to unnecessary force upon his return from Elmira on May 10, 2012.. Dkt. #1, p.11.  Plaintiff seeks to amend the complaint to add these corrections officers as defendants.  Dkt. #32, pp.24-25.  Given plaintiff's failure to contradict defendants' evidence that this claim is not properly exhausted, and in light of the procedural posture of this action, that request is denied.

has been able to exhaust, even during this time period at Attica. *See Toliver v. Stefnik*, No. 12-CV-77, 2016 WL 3349316, at *6 (N.D.N.Y. June 15, 2016) (vague and conclusory allegations that plaintiff filed other grievances that were not accepted by the IGRC do not, in light of documentation setting forth plaintiff's grievance history, create a factual dispute material to the issue of whether plaintiff exhausted his administrative remedies).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (Dkt. #31), is denied and defendant's motion for summary judgment (Dkt. #20), is granted.

**SO ORDERED.**

DATED:      Buffalo, New York
            July 25, 2016

                           *s/ H. Kenneth Schroeder, Jr.*
                           **H. KENNETH SCHROEDER, JR.**
                           **United States Magistrate Judge**